UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

_____

| | |
|---|---|
| ELIZABETH BUSCH MILLER | CIVIL ACTION NO. 16-0764 |
| VERSUS | JUDGE ELIZABETH ERNY FOOTE |
| J-W OPERATING CO. | MAGISTRATE JUDGE HAYES |

_____

## MEMORANDUM RULING

Before the Court is a motion for partial summary judgment by Defendant J-W Operating Co. and a motion for partial summary judgment by Plaintiff Elizabeth Busch Miller. For the reasons discussed below, Defendant's motion for partial summary judgment [Record Document 17] is **GRANTED**. Plaintiff's motion for partial summary judgment [Record Document 19] is **DENIED**. Plaintiff's May 22, 2015 and July 10, 2015 letters were insufficient as a matter of law to trigger the reporting requirements of Louisiana Revised Statute § 30:103.1. Defendant's responses to Plaintiff's September 14, 2015 and November 3, 2015 letters requesting reports under La. R.S. § 30:103.1 were timely. Finally, Plaintiff's claims under La. R.S. §§ 31:212.21-.23 are **DISMISSED with prejudice**.

**I. Background**

Plaintiff is the unleased owner of mineral interests in land contained within a drilling unit for which Defendant is the operator. Record Document 1-2. The parties filed a joint stipulation as to the communications between them leading up to this action, and agree on the following facts. Record Document 16. On May 22, 2015, Plaintiff

wrote a letter to Defendant, identifying herself as the unleased owner of land in Bossier Parish on which Defendant operated an oil well, and requesting reports detailing well costs and production, to which unleased owners are entitled by statute. Record Document 16-1, p. 1. After introducing herself, Plaintiff writes: "I believe that JW-Operating Company is the operator of producing wells to which I own an interest in Bossier Parish, Louisiana. As an unleased mineral owner, and pursuant to LA. R.S. 30:103.1, and LA. R.S. 30:10 I am formally requesting" the reports required by statute. Id. Plaintiff then included her address. Id. Other than the name of the parish, she did not further identify the property she owned or the drilling unit she believed it to be in. Id.

Defendant, who operates a number of wells in Bossier Parish, responded and requested more information to determine whether Plaintiff was in fact an unleased owner of mineral interests in one of its drilling units. Record Document 16-2. Plaintiff responded, saying "I was hoping that J-W, as operator, would be able to provide that exact information" as to the "producing wells in which I own an interest," but providing no additional information about her interest or the property location. Record Document 16-3. Defendant again asked Plaintiff to identify the property she owned. Record Document 16-4. At this point, Plaintiff performed a title search and identified 5.037 acres of land in Bossier Parish that she owned. Record Documents 16-5 to 16-11. She sent all this information to Defendant, and it sent back cost and production reports and a check for $715,397.22, which it believed was the amount owed for Plaintiff's share of

production, less costs for equipping and operating the well, plus judicial interest. Record Document 16-12, p. 2. Plaintiff then filed this action, claiming that Defendant has failed to comply with statutory reporting and payment obligations and that, as a result, it was not entitled to deduct operating costs from Plaintiff's share of the well revenue. Her claims are brought under La. R.S. §§ 30.10, 30:103.1, 30:103.2, 31:212.21, 31:212.22, and 31:212.23.

Defendant moved for partial summary judgment on three issues: (1) the sufficiency of the first two of Plaintiff's demand letters, (2) the timeliness of Defendant's responses to Plaintiff's later demand letters, and (3) the applicability of La. R.S. §§ 31:212.21-.23. Record Document 17, p. 2. Plaintiff also moved for partial summary judgment on the issue of timeliness, asking the Court to find that Plaintiff's initial requests were sufficient, that Defendant did not comply with the reporting requirements, and that the statutory penalty for failure to comply should therefore be imposed. Record Document 19.

## II. Analysis

### A. Standard of Review

Federal Rule of Civil Procedure 56(a) directs that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[1] Summary judgment is

---

[1] Rule 56 was amended effective December 1, 2010. Per the comments, the 2010 amendment was intended "to improve the procedures for presenting and deciding summary judgment motions and to make the procedures more consistent with those already used in many courts. The standard for granting summary judgment remains unchanged." Therefore, the case law applicable to Rule 56 prior to its amendment remains authoritative, and this Court will rely on it accordingly.

appropriate when the pleadings, answers to interrogatories, admissions, depositions, and affidavits on file indicate that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). When the burden at trial will rest on the non-moving party, the moving party need not produce evidence to negate the elements of the non-moving party's case; rather, it need only point out the absence of supporting evidence. See id. at 322-23.

If the movant satisfies its initial burden of showing that there is no genuine dispute of material fact with the motion for summary judgment, the nonmovant must demonstrate that there is, in fact, a genuine issue for dispute at trial by going "beyond the pleadings" and designating specific facts for support. Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994). "This burden is not satisfied with 'some metaphysical doubt as to the material facts,'" by conclusory or unsubstantiated allegations, or by a mere scintilla of evidence. Id. (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)). However, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1985) (internal citations omitted); Reid v. State Farm Mut. Auto Ins. Co., 784 F.2d 577, 578 (5th Cir. 1986) (the court must "review the facts drawing all inferences most favorable to the party opposing the motion"). While not weighing the evidence or evaluating the credibility of witnesses, courts should grant summary judgment where the critical evidence in support of the nonmovant is so weak

and tenuous that it could not support a judgment in the nonmovant's favor.  Little, 37 F.3d at 1075.

### B. Timeliness of Plaintiff's Demand Letters

In order to avoid waste or needless drilling for oil and gas, the Louisiana Commissioner of Conservation may designate drilling units and appoint an operator to manage oil production on that unit. La. R.S. §§ 30:9, 30:10. Often, the owners of the mineral interests contained within the drilling unit will lease their mineral interests to the operator, and that lease will control the parties' obligations regarding distribution of information, costs and revenue. However, an operator need not obtain a lease with every owner in a drilling unit. If an owner has unleased mineral interests in a drilling unit, the parties' obligations are controlled by statute. La. R.S. § 30:103.1. An unleased owner is entitled to receive, upon request, reports detailing the cost of drilling, equipping, and operating the well, as well as a proportionate share of revenue from the oil produced. Id. Likewise, the operator is required to provide the operating expense reports to an unleased owner who requests them, and is allowed to recoup a proportionate share of expenses from that owner. Id. Section 103.1 establishes the reporting requirement:

> Whenever there is included within a drilling unit, as authorized by the commissioner of conservation, lands producing oil or gas, or both, upon which the operator or producer has no valid oil, gas, or mineral lease, said operator or producer shall issue the following reports to the owners of said interests by a sworn, detailed, itemized statement.

La. R.S. § 30:103.1. The statute goes on to detail the information that must be included

in these reports. Subsection (C) establishes that "[r]eports shall be sent by certified mail to each owner of an unleased oil or gas interest who has requested such reports in writing, by certified mail addressed to the operator or producer. The written request shall contain the unleased interest owner's name and address." La. R.S. 30:103.1(C). Thus, in order to trigger the reporting obligations, an unleased owner must put an operator on notice that it is, in fact, an unleased owner in a drilling unit managed by the operator. There is no affirmative duty on the part of operators to automatically send reports to all unleased owners. The statute is clear that reports are only required when an unleased owner has requested them. Adams, 561 Fed. App'x at 325 (holding that an operator's reporting duty is "not triggered until a written request is sent by certified mail" by the owner).

An operator's failure to comply with the reporting requirements imposes a harsh penalty: the operator forfeits his right to contribution for expenses from the unleased owner. La. R.S. § 30:103.2. Because this penalty is harsh, sections 103.1 and 103.2 are strictly construed by courts. White v. Phillips Petroleum Co., 232 So.2d 83, 90 (La. Ct. App. 1970) ("[La. R.S. § 30:103.2] is a penal statute, requiring strict construction."); Scurlock Oil Co. v. Getty Oil Co., 324 So. 2d 870, 876 (La. Ct. App. 1975). Plaintiff argues that Defendant failed to timely comply with these reporting requirements, and that the statutory penalty should therefore be imposed. Record Document 19. Defendant argues that the first two letters sent by Plaintiff, on May 22, 2015 and July 10, 2015, requesting reports under § 30:103.1, were inadequate to trigger the reporting

requirements or the statutory penalty. Record Document 17-2, p. 14. Furthermore, Defendant argues that it did timely comply with Plaintiff's later requests for reports. Id., p. 19.

Plaintiff wrote her first letter requesting reports to Defendant on May 22, 2015. Record Document 16-1, p. 1. She identified her name and address, and requested initial reports under section 103.1. Id. She did not identify the land she owned, the drilling unit where the land was located, or the well that Defendant was operating, writing only "I believe that JW-Operating Company is the operator of producing wells to which I own an interest in Bossier Parish, Louisiana." Id. Defendant wrote back on June 16 and asked for more information: "Would you please send us a list of the producing wells in Bossier Parish, Louisiana in which you claim to own an interest?" Record Document 16-2. Defendant went on to say that it had identified an oil and gas lease that Plaintiff had previously owned in Bossier Parish, but that it believed that interest had been sold, and it had not found "any indication that [J-W Operating] operates any well in Bossier Parish, Louisiana in which you individually own an oil and gas interest, leased or unleased." Id. Plaintiff then wrote a second letter on July 10, 2015, again requesting reports but providing no additional information to identify the property. Record Document 16-3. Defendant again responded, saying it did not believe she was a leased or unleased owner in any of the wells it operates, but that if she thought this was incorrect, "please provide me with any properties you think you have a leased/unleased mineral interest that J-W operates." Record Document 16-4. It is unclear whether

Plaintiff actually knew what land she owned when she wrote to Defendant. Only after Defendant's second response did she perform a title search and send information identifying her land to Defendant. Record Documents 16-6, 16-7. Not long afterward, Defendant sent Plaintiff a check for her share of the production revenue along with production reports. Record Document 16-12.

Plaintiff argues that by providing her name and address to Defendant in the first two letters on May 22 and July 10, she put Defendant on notice of her unleased interest as required by section 103.1, and Defendant's subsequent failure to timely comply makes it subject to the penalty provision of section 103.2. Certainly, Defendant was under no obligation to provide reports to Plaintiff before she put Defendant on notice of her claim in 2015. Although Plaintiff attempts to cast Defendant's failure to independently determine that she was an unleased owner as underhanded, section 103.1(C) is clear that only an unleased owner's request triggers the reporting requirement. See Adams, 561 Fed. App'x at 325. Defendant was under no obligation to provide reports to Plaintiff until they were requested. Plaintiff argues that once she claimed to be an owner in a drilling unit operated by Defendant, Defendant was required to undertake a title search in order to identify which property she owned. Record Document 1-2, p. 9.

Neither party points to a case directly addressing whether an unleased owner must identify the land she owns in order to trigger the reporting requirements of section 103.1. Absent a ruling from the Louisiana Supreme Court, this Court must

attempt to determine how that court would resolve the issue. TDX Energy, LLC v. Chesapeake Operating, Inc., 857 F.3d 253, 259 (5th Cir. 2017). As discussed above, the penalty imposed by section 103.2 is harsh, and Louisiana courts have been clear that it must be strictly construed. Although no Louisiana case resolves this issue, in a different context, Louisiana courts have ruled that an oil and gas company was not under an obligation to track down the address change or ownership change of a lessee. Ross v. Enervest Operating, LLC, 48,229 (La. App. 2 Cir. 6/26/13); 119 So. 3d 943, 957. The owners themselves, the court reasoned, "were in a much better position to be aware of address and/or ownership changes regarding property they owned," and therefore the burden was on them to provide notice of their change of address or change of ownership. Id. A similar balance exists in this case. Plaintiff is in a much better position than Defendant to know what land she owns.

Moreover, Plaintiff's proposed rule – that an operator must undertake a title search for anyone claiming to be an unleased owner – would lead to absurd results. Any individual, with any reason or no reason at all to believe that she owned land contained in a drilling unit with a producing well, could write to the well's operator and demand reports, forcing an operator to undertake title searches on an ongoing basis for all land in all drilling units where it operates wells anywhere in the state. Even worse, this rule would do nothing to discourage a malicious owner who knew exactly what land she owned from writing to an operator and requesting reports, without identifying the land, in hopes that an operator might not be able to comply in a timely fashion and she could

have the statutory penalty imposed.

Plaintiff's reading of section 103.1 is unreasonable. It contradicts the clear language of the statute that reports need only be provided when requested and violates the rule of strict construction by reading into the statute a requirement not found in the plain language. It upsets the general reasoning of Louisiana courts that the party in a better position to know information bears the burden of providing that information. The Court will not read the statute to violate all of these principles and to impose such a significant burden on operators absent explicit statutory language. The purpose of the statute is to trigger reporting requirements once an operator is on notice of an unleased owner's claim. Without any information about what interest the unleased owner claims, the operator cannot fairly be said to be on notice. Plaintiff's first two letters were insufficient to put Defendant on notice of her unleased ownership because they did not provide any information about the land Plaintiff owned. It is Plaintiff's duty to know what land she owns, not Defendant's duty to find out for her. Plaintiff's May 22, 2015 and July 10, 2015 letters are therefore insufficient as a matter of law to trigger the reporting requirements of section 103.1 and the penalty provision of section 103.2.

C. <u>Timeliness of Defendant's Later Responses</u>

After Plaintiff conducted a title search and told Defendant what land she owned, she sent a third letter on September 14, 2015, requesting reports. Record Document 16-8. On October 12, 2015, Defendant responded with reports as well as payment. Record Document 16-12. On November 3, 2015, Plaintiff sent another letter to

Defendant stating that she believed that the October 12, 2015 reports were insufficient to comply with the requirements of section 103.1. Record Document 16-14. On December 4, 2015, Defendant responded and stated it believed it had fully complied with the statute. Record Document 16-15. Defendant moved for partial summary judgment that both its October 12 and December 4 responses were timely.

Sections 103.1 and 103.2 impose a two-step notification requirement. First, the unleased owner must send a written request for a sworn, detailed, itemized statement of operating costs. § 30:103.1. Second, the unleased owner must send written notice "calling attention to failure to comply with the provisions of R.S. 30:103.1." § 30:103.2; see Adams v. Chesapeake, 561 Fed. App'x 322, 325 (5th Cir. 2014). The first request must be answered within 90 days of receipt of the request, and the second notice of failure to comply must be answered within 30 days of receipt of the request.[2] Plaintiff's first request for reports was sent on September 14 (discounting the previous requests deemed inadequate above), and Defendant responded within 90 days. Plaintiff gave purported notice of failure to comply on November 3, received by Defendant on November 5, and Defendant responded within 30 days. Both of Defendant's responses were timely. Plaintiff concedes as much. Record Document 23, p. 9 ("Miller does not

---

[2] Section 103.1(C) provides that "[i]nitial reports shall be sent no later than ninety calendar days after the completion of the well. The operator or producer shall begin sending quarterly reports within ninety calendar days after receiving the written request, whichever is later, and shall continue sending quarterly reports until cessation of production." § 30:103.1(C). Although this language is a bit ungrammatical, the Court understands the statute to require that initial reports must be sent within 90 days of completion of the well or of the unleased owner's request, whichever is later, because, as discussed above, there is no affirmative duty of the operator to send reports absent a request from an unleased owner. Likewise, quarterly reports must be sent within 90 days of receipt of the unleased owner's request.

dispute that the responses were sent within a timely manner as defined within La. R.S. 103.1 and 103.2"). In response, Plaintiff refers obliquely to the sufficiency of the reports. Record Document 19-1, p. 14. The Court does not interpret Plaintiff's motion to raise the issue of sufficiency of the reports, nor does the Court have the reports before it. The only issue as to the reports that is currently before the Court is the timeliness of Defendant's responses. As there is no dispute of fact as to timeliness, Defendant is entitled to partial summary judgment that its October 12, 2015 and December 4, 2015 responses to Plaintiff's requests for reports were timely under sections 103.1 and 103.2.

    D. La. R.S. § 31:212.21

In her complaint, Plaintiff asserts claims for violation of sections 31:212.21, 212.22 and 212.23. Record Document 1-2, p. 10. Section 31:212.21 provides:

> If the owner of a mineral production payment or a royalty owner other than a mineral lessor seeks relief for the failure of a mineral lessee to make timely or proper payment of royalties or the production payment, he must give his obligor written notice of such failure as a prerequisite to a judicial demand for damages.

Section 212.22 provides that an obligor shall have thirty days to pay royalties or respond in writing, and section 212.23 establishes the available penalties for nonpayment. The Fifth Circuit has held that unleased owners may not bring claims under sections 212.21 – .23. Adams v. Chesapeake Operating Co., 561 Fed. App'x 322 (5th Cir. 2014). There is no dispute that Plaintiff is an unleased owner. Plaintiff argues only that "the Fifth Circuit decision was incorrect in its reasoning" in Adams. Record Document 23, p. 7. This Court cannot overrule the Fifth Circuit. Plaintiff is an unleased

owner and therefore may not bring claims pursuant to sections 31:212.21 – .23. These claims are **DISMISSED** with prejudice.

### III. Conclusion

For the reasons discussed above, Defendant's motion for partial summary judgment [Record Document 17] is **GRANTED**. Plaintiff's motion for partial summary judgment [Record Document 19] is **DENIED**. Plaintiff's May 22, 2015 and July 10, 2015 letters were insufficient as a matter of law to trigger the reporting requirements of La. R.S. § 30:103.1. Defendant's responses to Plaintiff's September 14, 2015 and November 3, 2015 letters requesting reports under La. R.S. § 30:103.1 were timely. Finally, Plaintiff's claims under La. R.S. § 31:212.21-.23 are **DISMISSED with prejudice**.

**THUS DONE AND SIGNED** in Shreveport, Louisiana, this 28th day of July, 2017.

ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE